Date signed December 11, 2008



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| EDWARD LEE HOWLETTE, | * | 03-60757-JS |
| Debtor | * | Chapter 11 |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

| | | |
|---|---|---|
| EDWARD LEE HOWLETTE, | * | |
| Plaintiff | * | |
| v. | * | Adv. Proc. No. 07-00954-JS |
| HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C. | * | |
| | * | |
| Defendant | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

### AMENDED MEMORANDUM OPINION
### DENYING DEFENDANT'S MOTION FOR ORDER
### STAYING FUTURE FILING ABSENT PAYMENT OF FEES AND COSTS

This matter came before the Court upon the defendant's motion for an order

staying future filing absent payment of fees and costs. For the reasons stated, the motion will be denied.

## ALLEGATIONS OF PLAINTIFFS

1. The debtor, Edward Howlette (the "debtor" or "Howlette"), is the sole owner of NexGen Solutions, Inc., and NexGen Commerce, Inc. ("the Nexgen Companies"), both of which are in the business of designing software. They were incorporated in Delaware but have principal places of business in Maryland. The Nexgen Companies are not in bankruptcy.

2. Howlette and the Nexgen Companies received financing from Meridian Management Group ("MMG"), a private entity that operates the Maryland Small Business Development Financing Agency ("MSBDFA").

3. The purpose of the financing was to fund a contract allegedly worth $84 million that the debtor and the Nexgen Companies entered into in October 2000 with the U.S. government to develop software for the United States Small Business Administration ("SBA").

4. After the 2000 presidential election, a newly-appointed SBA administrator awarded the contract to a different software company, eScout. The instant complaint alleged that eScout improperly influenced the SBA and MMG to rescind its contract with the Nexgen Companies.

5. The debtor engaged the law firm of O'Rourke and Cundra to file bankruptcy on his behalf and to file suit on behalf of himself and the Nexgen Companies against MMG, eScout and several other entities. A fee agreement provided that Howlette would not be liable to the law firm for more than $25,000 in fees for the bankruptcy filing and that the Nexgen Companies would not pay the firm more than $25,000 for the lender liability claims.

6. O'Rourke and Cundra merged into Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. ("Hall Estill), which assumed the predecessor law firm's contract with Howlette and the Nexgen Companies.

7. In 2004, the Nexgen Companies' corporate counsel provided Hall Estill with two draft complaints. The plaintiffs alleged that Hall Estill performed little or no work on the case until September 2005, when the firm demanded $5,000 to file the complaint. The debtor made the payment under protest.

8. The plaintiffs allege that in October 2005, Hall Estill demanded that the debtor enter into a new retainer agreement to include the firm's representation of the Nexgen Companies, despite the fact that the law firm represented the companies pursuant to the original retainer agreement.

9. The plaintiffs allege that on December 14, 2005, Hall Estill drafted a defective four-page complaint against MMG and others. According to the

plaintiffs, the complaint failed to join all of the defendants against which the debtor desired to bring suit. The complaint was not filed.

10. On December 23, 2005, MMG filed suit against the Nexgen Companies in the Circuit Court for Baltimore City. Hall Estill did not file an answer, but instead attempted to have the litigation removed to the bankruptcy court some 16 days after an answer was due.

11. Hall Estill asserted that it filed a 61-page counterclaim and a 71-page opposition to a motion to dismiss the counterclaim.

12. At some point in 2006, the Hall Estill attorney assigned to the case died. The plaintiffs allege that Hall Estill did not inform the debtor of the attorney's death, but merely reassigned the case to a different attorney.

13. Hall Estill billed the debtor and the companies for more than $60,000 in fees for work performed since May 2006, and demanded that the debtor refinance his home as a condition precedent to the firm's continued representation of him and the Nexgen Companies. The debtor refinanced his home and assigned to Hall Estill $50,000 of the equity.

14. In January 2007, Ronald Levin, the debtor's bankruptcy counsel, left Hall Estill and joined Semmes, Bowen and Semmes. However, due to a conflict, the MMG litigation remained with Hall Estill. Mr. Levin continued to serve as the

debtor's bankruptcy counsel.

15. In March 2007, the last Hall Estill attorney who was admitted to practice in Maryland left the firm. Several other attorneys who were familiar with the case also left Hall Estill.

16. On March 8, 2007, Hall Estill filed a motion to withdraw from the lenderliability litigation and gave the debtor less than 24 hours' notice of the withdrawal. The plaintiffs alleged that Hall Estill led the debtor to believe that it would obtain new counsel to represent him, but instead only retained new counsel to represent itself in its withdrawal motion. The motion was granted over the debtor's objection, which left the Nexgen Companies without counsel.

## *PROCEDURAL HISTORY*

17. On December 5, 2007, the debtor and the Nexgen Companies filed the instant complaint against Hall Estill in which they asserted claims for breach of contract, unjust enrichment, negligence and legal malpractice. The complaint alleged malpractice in the failure to sue eScout and the State of Maryland, which resulted in the loss of those claims due to limitations.

18. On January 7, 2008, Hall Estill filed a motion to dismiss [P. 6] the instant complaint.

19. A hearing on the motion was held on March 6, 2008, at which time this

Court took the matter under advisement.

20. On March 18, 2008, in the bankruptcy case, the debtor filed an application to compromise the controversy with MMG [P. 275]. According to the terms of the proposed settlement, MMG agreed to pay the debtor $90,000, and $90,000 to each of the two Nexgen Companies.

21. On April 7, 2008, Hall Estill filed an objection to the settlement [P. 278]. On April 8, 2008, Industrial Bank, N.A also filed an objection [P. 279].

22. This Court scheduled a hearing on the settlement and the objections for May 7, 2008.

23. On April 8, 2008, while Hall Estill's motion to dismiss the complaint was under advisement, the debtor filed a notice of voluntary dismissal [P. 21] of its complaint against Hall Estill. Hall Estill alleges that the debtor moved to dismiss the complaint in order to deprive Hall Estill of standing to object to the settlement.[1]

24. On April 16, 2008, Hall Estill filed the instant motion [P. 22], which seeks an order of court pursuant to Federal Rule of Civil Procedure 41 to provide that if the debtor should reinstate this complaint, he will be required to prepay to the defendant all of the duplicative costs that will have resulted from the

---

[1] After the hearing on May 7, 2008, Hall Estill withdrew its objection to the settlement. Industrial Bank withdrew its objection only as to the amount of the settlement, but maintained its objection as to the distribution of the settlement proceeds. This Court overruled the objection and approved the settlement by order dated May 15, 2008 [P.291].

complaint's dismissal and reinstatement, totaling some $46,021.23.

## CONCLUSIONS OF LAW

1. Federal Rule of Civil Procedure 41, made applicable to the instant

bankruptcy proceeding by Federal Bankruptcy Rule 7041,[2] governs this decision.

---

[2] Federal Rule 41(a) and (d) provides as follows:

**(a) Voluntary Dismissal.**

(1) *By the Plaintiff.*

*(A) Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(B) Effect. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

(2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

\*          \*          \*          \*          \*

(d) Costs of a Previously Dismissed Action. If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

2. The Court agrees with the debtor's assertion that the motion filed by Hall Estill is not ripe and that this Court is without jurisdiction to prospectively impose costs on the debtor, and that the defendant must wait to file such a motion until such time as the plaintiffs reinstate the complaint.

3. The Court reads and interprets the Federal Rules of Civil Procedure according to their plain meaning. Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L. Ed.2d 438 (1989).

4. The plain meaning of the rule is that a dismissal under Federal Rule 41(a)(1)(A)(i) "is self-executing, i.e., it is effective at the moment the notice is filed with the clerk and no judicial approval is required." Marex Titanic, Inc. v. Wrecked & Abandoned Vessel, 2 F.3d 544, 546 (4th Cir. 1993); see also Comm. Space Mgmt. Co. v. Boeing Co., 193 F.3d 1074, 1078 (9th Cir. 1999) ("[I]t is beyond debate that a dismissal under Rule 41(a)(1) is effective on filing, no court order is required, the parties are left as though no action had been brought, and the district court lacks jurisdiction to do anything about it).[3]

---

> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
>
> (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(a) and (d) (2007).

[3] The Fifth Circuit explained the consequences of such a dismissal: "Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So

8

5. Therefore, pursuant to Federal Rule 41(d), costs cannot be imposed until the filing of a second complaint, if any. See Bran v. Sun Pac. Farming Coop., No. CV F 06-0871-LJO-TAG, 2007 WL 781865 (E. D. Cal. March 13, 2007) ("The 'two dismissal' rule adjudication... is not yet ripe" because a third complaint had not yet been filed.).

**WHEREFORE**, the motion of Hall Estill must be denied.

**ORDER ACCORDINGLY.**


cc:    Jefferson V. Wright, Esquire
       E. Hutchinson Robbins, Jr., Esquire
       Patricia A. Borenstein, Esquire
       MILES & STOCKBRIDGE P.C.
       10 Light Street
       Baltimore, Maryland 21202

       Ronald M. Levin, Esquire
       Semmes, Bowen & Semmes
       250 W. Pratt Street
       Baltimore, MD 21201

       Matthew S. Johnston, Esquire
       Gordon & Simmons, LLC

---

long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of the court closing the file. Its alpha and omega was the doing of the plaintiff alone." Am. Cyanamid Co. v. McGhee, 317 F.2d 295, 297 (5th Cir.1963).

603-B West Patrick Street
Frederick, MD 21701


Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard Street
Suite 2625
Baltimore, MD 21201